# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

PAMELA L. FAIRFIELD, )
)
        Plaintiff, )
)
v. ) Case No. CIV-12-450-RAW-KEW
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Pamela L. Fairfield (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 10, 1973 and was 38 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained a Bachelor's Degree in Psychology and Accounting. Claimant has worked in the past as an accounting clerk, financial analyst, and tax preparer. Claimant alleges an inability to work beginning March 31, 2009 due to limitations

3

resulting from depression and a severe sinus condition.

## Procedural History

On July 13, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 11, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick by video. On April 19, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on August 29, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He determined that Claimant did not suffer from any severe impairments.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to adequately develop the record; (2) failing to find Claimant suffered from any severe impairments; and (3) engaging in a faulty credibility analysis.

**Duty to Develop the Record**

In his decision, the ALJ determined Claimant suffered from the medically determinable impairments of ethmodial and maxillary sinusitis, classic migraine, irritable bowel syndrome, obesity, depression, and schizoaffective disorder. (Tr. 27). He also determined, however, that none of these impairments significantly limited Claimant's ability to perform basic work-related activities for 12 consecutive months. As a result, none of the conditions represented a severe impairment. (Tr. 27).

Claimant first contends the ALJ sent her for a consultative physical examination but did not require the examining physician to provide a medical source statement. The regulations provide on this issue that

(b)  Medical reports should include –

\* \* \*

(6) A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims). **Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete.**

20 C.F.R. § 404.1513(b)(6)(emphasis added by this Court).

The ALJ did not violate his duty to develop the record by failing to obtain a medical source statement from the consultative

5

examiner or Claimant's treating source.

Claimant also contends the ALJ should have ordered a consultative psychological examination. Instead, the ALJ requested that Claimant's primary care physician, Dr. Martin Davis - who is not a specialist in mental health - state whether Claimant's mental limitations caused more than minimal limitations. Dr. Martin answered the two questions posed by the ALJ in a document entitled "Treating Physician Mental Functional Assessment Questionnaire" with check marks to indicate he was treating Claimant for a mental condition but that the condition did not impose more than a minimal limitation. (Tr. 283).

In his decision, the ALJ recognized Dr. Martin's treatment of Claimant's depression in 2008. Dr. Martin prescribed Lexapro for the condition and Claimant reported it was working well and she was going to counseling. (Tr. 31).

On September 13, 2010, Claimant was assessed by H. Jack Perkins, LADC. Claimant reported that she had taken herself off of the medication to treat her depression. She presented with a flat affect and reported that she cried a lot. She did not appear motivated about anything. She had difficulty dealing with anxiety but she presented mainly for depression. She reported suicidal thoughts but did not believe she would hurt herself. Claimant reported concern about hearing noises like music playing and seeing shadows of people or objects that disappear when she turns to look

6

at them. Claimant appeared to be troubled by the death of her sister, crying when it was mentioned. She reported having difficulty trusting, especially men, and appeared not ready to fully disclose. (Tr. 479).

Mr. Perkins found Claimant to be very depressed, had difficulty making eye contact, and cried during the interview. When she attempted to go to sleep, she heard music that was difficult to identify. She experienced hallucinations for since 2000. (Tr. 479-80).

Mr. Perkins diagnosed Claimant with Schizoaffective Disorder. He estimated her GAF at 55. The severity of her condition was rated as "moderate." (Tr. 484). Mr. Perkins recommended a return to medication to be evaluated by a physician and counseling. (Tr. 486).

The ALJ chose to reject Mr. Perkins findings while giving "great weight" to the exceptionally brief and detail deficient statement of Dr. Martin. (Tr. 33).

On May 3, 2011, Claimant underwent a psychological evaluation by Dr. Robert L. Spray, Jr. Dr. Spray noted Claimant had average intelligence. He also acknowledged Claimant's hallucinations since 2007. Her affect was saddened and tearful and depressed. (Tr. 608). Claimant stated she had episodes of being "too happy" and irritability during which she would spend too much money. Claimant also described episodes of anxiety and difficulty with attention

and concentration. (Tr. 608-09). Dr. Spray diagnosed Claimant with Mood Disorder, NOS, with psychotic features and Panic Disorder, NOS. (Tr. 609).

On May 27, 2011, Dr. Spray completed an RFC assessment form as to Claimant's mental impairments. He found Claimant to be severely limited in areas of dealing with work stresses, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, maintaining regular attendance, completing a normal workday, completing a normal workweek, performing at a consistent pace, demonstrating reliability, behaving in an emotionally stable manner, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (Tr. 610-12). Dr. Spray also found Claimant to be markedly limited in eight additional functional areas and moderately limited in 13 other areas. Id. In the portion of the form which required Dr. Spray to identify his supporting diagnosis for the limitations, he noted Claimant's depressed mood, poor control of expressions of emotions, Claimant being overwhelmed by stressors, and her hallucinations. (Tr. 611). He also noted Claimant's poor control of affective displays and her panic attacks. (Tr. 612). Dr. Spray concluded that Claimant could not manage benefits in her own best interest due to a history of excessive spending. (Tr. 613).

This latter assessment was not available to the ALJ at the

8

time of his decision but was included in the record to the Appeals Council. The Appeals Council merely stated the additional records would not have changed the ALJ's decision. (Tr. 2).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Additional testing and consultative evaluation may be required if the medical evidence is

9

in conflict or is inconclusive. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997); 20 C.F.R. § 404.1519a(b)(4). Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

Given the inherent conflict between the findings of Mr. Perkins and Dr. Martin, the ALJ should have ordered a consultative mental health examination. Moreover, the brevity and lack of explanation in Dr. Martin's two check marks on a form and the considerable weight given that opinion by the ALJ requires further expansion of the record on Claimant's mental status. On remand,

the ALJ shall obtain such psychological consultative examinations as are necessary to ascertain the functional limitations brought about by Claimant's mental condition.

**Step Two Analysis**

Claimant also contends she suffers from severe impairments. This Court is most concerned with Claimant's mental status. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Dr. Spray's analysis, albeit outside of record before the ALJ, casts serious doubt upon the ALJ's findings of no severe impairment. Mr. Perkins' assessment largely arrives at the same

conclusions regarding her condition.  On remand, the ALJ shall consider Dr. Spray's evaluation and functional assessment and reconsider Claimant's step two showing.

### Credibility Analysis

While the credibility evaluation is largely in the province of the ALJ, Claimant's statements of limitation correlate with the functional assessment of Dr. Spray.  On remand, the ALJ shall re-evaluate Claimant's credibility.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE